UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

DERRICK BIENAIME,

                       Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-6 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 13, 2016, Derrick Bienaime pleaded guilty to Bank Fraud Conspiracy and Bank Fraud against three banks. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Derrick Bienaime is hereby sentenced to 33 months of incarceration, 2 years of supervised release, and payment of restitution, a forfeiture money judgment of $1,000,000.00, and a $400.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Derrick Bienaime ("Defendant"). *See* Superseding Indictment, ECF No. 48. On September 13, 2016, Defendant pleaded guilty to Counts Sixty-Five, Sixty-Six, Sixty-Seven, and Sixty-Nine of the Superseding Indictment, which charged Bank Fraud Conspiracy and Bank Fraud against three banks. *See* Plea Agreement ¶ 1, ECF No. 347.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range,

the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now twenty-one years old, was born in Brooklyn, New York on July 4, 1995. Presentence Investigation Report ("PSR") ¶ 41, ECF No. 390. His parents separated when he was two years old, and Defendant was raised by his mother in a lower-middle income household in Brooklyn, but he saw his father every weekend until his father moved to Haiti in 2005. *Id.* ¶¶ 41, 44. After his father left the United States, Defendant had little contact with him, and his father provided limited support for Defendant. *Id.* ¶ 44. Defendant's six siblings remain supportive of Defendant despite his criminal history. *Id.* ¶ 43.

When Defendant was growing up, his mother worked long hours at two different jobs, so she was often unable to supervise him after school. *Id.* ¶ 44. Despite his mother's best efforts, Defendant was unchaperoned much of the time during his youth and started to associate with older individuals in the neighborhood who were a bad influence on him. *Id.* ¶ 63. According to his mother, Defendant was a "follower" and only became involved in the instant offense because he surrounded himself with the wrong people. *Id.* ¶ 42.

Defendant was an average student who earned good grades in reading and math, but he stated that he engaged in truancy starting in elementary school because he did not receive much parental guidance. *Id.* ¶ 63. Defendant attended several different public schools and was held back twice in the fifth grade because he did not complete his homework assignments and was often absent. *Id.* In 2005, at the age of ten, Defendant was diagnosed with and prescribed medication for Attention Deficit Disorder and Attention Deficit Hyperactivity Disorder. *Id.* ¶¶ 54, 63. He stopped taking the medication after two years, however, because it affected his appetite and made him very tired. *Id.* Defendant first smoked marijuana at the age of twelve and smoked daily from the age of fifteen until his arrest for the instant offense. *Id.* ¶ 57.

From 2011 to 2012, Defendant attended the ninth and tenth grades at Abraham Lincoln High School in Brooklyn, but he eventually withdrew because "school was not for [him]." *Id.* ¶ 62. During the same period, Defendant also worked part-time at a bakery until he resigned because he was not earning enough money. *Id.* ¶ 65. From 2013 to 2014, Defendant was enrolled in automobile and medical support courses at Job Corps in Brooklyn, but he was expelled from the program for fighting and smoking marijuana. *Id.* ¶ 61.

In 2014, at the age of nineteen, Defendant was arrested for striking a livery cab driver and fleeing to avoid payment of the fare; a bench warrant was issued for his arrest in 2015. *Id.* ¶ 38.

Defendant was also arrested in 2014 for possession of marijuana and received a conditional discharge. *Id.* ¶ 35. When Defendant was twenty years old, his mother moved him and his siblings from Brooklyn to New Jersey in order to separate him from "those individuals that cause the trouble." *Id.* ¶¶ 42, 46. Prior to his arrest for the instant offense, Defendant was enrolled in a high school equivalency preparation program at Long Island University in Brooklyn. *Id.* ¶ 60. Defendant has never married and does not have any children. *Id.* ¶ 45.

In or around 2014, Defendant became a member of the gangs Eight Trey and Shoota Gang as well as an associate of the Outlaw Gangsta Crips ("OGC"). *Id.* ¶ 15. The OGC was a gang comprised primarily of individuals residing in and around the East Flatbush neighborhood of Brooklyn and was a subgroup of the Crips gang. *Id.* ¶ 7. Members and associates of OGC have engaged in drug trafficking, fraud, firearms trafficking, promoting prostitution, and acts of violence, including murder, attempted murder, robbery, and assault. *Id.* The purposes of OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in their victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 8.

Throughout 2014 and the first half of 2015, Defendant and other associates and/or members of the OGC used fraudulent checks to commit bank fraud. *Id.* ¶¶ 1-4, 10-13, 15. After obtaining legitimate checks from co-conspirators, Defendant and others would create fraudulent checks bearing the same account and routing numbers. *Id.* ¶ 11. The fraudulent checks, which appeared to be issued by legitimate businesses, would be deposited into the bank accounts of unindicted co-conspirators via ATMs, *id.*, whereupon the banks would make a portion of the deposited money immediately available for withdrawal, *id.* ¶ 12. Using their co-conspirator

4

account-holders, Defendant and others would then withdraw the available money, usually hundreds of dollars at a time, which represented fraudulently obtained funds. *Id.* ¶ 12. Once the banks or purported check writers identified the deposits as fraudulent, the banks would assume the loss on behalf of the defrauded check writers. *Id.*

As part of the conspiracy, Defendant and others defrauded several banks throughout New York City and elsewhere, including Bank of America, JPMorgan Chase, and TD Bank. *Id.* ¶¶ 1-4, 13, 15. The total loss to the victim banks exceeded $550,000.00. *Id.* ¶¶ 13, 15.

Defendant was arrested in New Jersey on July 16, 2015. *Id.* ¶ 15. During his incarceration, Defendant has enrolled in a high school equivalency program, as well as courses in anger management, health, and chess, at the Metropolitan Detention Center. *Id.* ¶¶ 47, 59. He has also incurred several infractions, including for possessing a sharpened metal weapon, which has been his most severe charge. *Id.* ¶ 47.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's crime both defrauded banks and helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and encourage him to sever his ties to Eight Trey, Shoota Gang, and the OGC. In a more general way, the Court's sentence sends a

5

message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains. Finally, it also considers Defendant's young age, desire to pursue his education, and need for surgery to treat a medical problem.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Bank Fraud Conspiracy, in violation of 18 U.S.C. § 1349, and three counts of Bank Fraud, in violation of 18 U.S.C. § 1344. For each count, he faces a maximum term of imprisonment of thirty years. *See* 18 U.S.C. §§ 1344, 1349. Defendant also faces a maximum term of supervised release of five years, *id.* § 3583(b)(1); a maximum fine of $1,000,000.00 per count, *id.* § 3571(b); restitution in an amount to be determined, *id.* § 3663A; and a special assessment of $400.00, *id.* § 3013. Under the plea agreement, Defendant faces a forfeiture money judgment of $1,000,000.00. *See* Plea Agreement ¶¶ 6-13.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2B1.1 applies to violations of 18 U.S.C. § 1344 and sets a base offense level of seven. *See* United States Sentencing Commission, *Guidelines Manual*, § 2B1.1(a)(1) (Nov. 2016) ("USSG"). Because the instant offense involved a loss of more than $550,000.00, fourteen levels are added. *Id.* § 2B1.1(b)(1)(H). Defendant's acceptance of responsibility by

pleading guilty, however, permits a three-level reduction. *Id.* § 3E1.1(a),(b). Accordingly, Defendant's total offense level is eighteen.

Defendant's prior adult conviction for possession of marijuana provides for a criminal history score of zero, which corresponds to a criminal history category of one. *Id.* ch. 5, pt. A.

Given a total offense level of eighteen and a criminal history category of one, the Guidelines suggest a term of imprisonment of between twenty-seven and thirty-three months. *Id.* Defendant may also be sentenced to a term of supervised release of two to five years, *id.* § 5D1.2(a)(1); a fine of between $6,000.00 and $4,000,000.00, *id.* § 5E1.2(c)(4), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1(b)(1).

The U.S. Probation Department recommends a sentence of thirty-three months of imprisonment followed by two years of supervised release with special conditions. *See* Sentence Recommendation at 1, ECF No. 390-1. Defense counsel seeks a sentence of twenty-seven months of imprisonment and requests that the Court consider Defendant's young age, difficult upbringing, learning disability, and medical problems when determining his sentence. *See* Def.'s Sentencing Mem. at 1-3, ECF No. 408. Counsel further notes Defendant has been "consistently remorseful" and "has the love, encouragement, and support from his family that he will need to ensure that he leads a productive, lawful life." *Id.* at 1, 3. The government requests a sentence within the advisory Guidelines range of twenty-seven to thirty-three months. *See* Gov't Sentencing Mem. at 1, ECF No. 410.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants to be sentenced in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is required under the Mandatory Victim Restitution Act of 1996. *Id.* § 3663A. Two of the three victim banks have not yet submitted affidavits of loss, however, so the specific amounts owed to the individual victims is currently unknown. *See* PSR ¶¶ 14, 85. The Court will consider any Affidavits upon their submission.

## CONCLUSION

A sentence of 33 months of incarceration, to be followed by 2 years of supervised release, as well as payment of restitution in an amount to be determined, a forfeiture money judgment of $1,000,000.00, and a $400.00 special assessment is appropriate and comports with

the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and addendum to it and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 18, 2017
       Brooklyn, New York